IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS ROE, | No. CIV S-05-1189-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 16).

/ / /

/ / /

/ / /

/ / /

1

# I.  BACKGROUND

Plaintiff applied for disability insurance benefits on August 15, 2003, based on disability.  In his application, plaintiff claims that his impairment began on April 1, 2001. Plaintiff claims his disability consists of a combination of lower back pain and foot numbness.[1] Plaintiff is a United States citizen born April 22, 1961, with a eleventh grade education.

Plaintiff's claim was initially denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on November 15, 2004, before Administrative Law Judge ("ALJ") Anotnio Acevedo-Torres.

In his December 15, 2004, decision, the ALJ made the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in . . . the Social Security Act and is insured for benefits through the date of this decision;

2.  After the alleged onset date of disability, the claimant returned to his job as a mechanic but worked light (modified) duty as instructed by his doctor; on his last day of modified duty (November 30, 2001), he was fired by his employer because he couldn't perform his usual and customary job duties as a mechanic; the undersigned concludes that the claimant's work activity while performing modified job duties constitutes an unsuccessful work attempt;

3.  The claimant's degenerative disc disease of the lumbar spine with spinal stenosis and radiculopathy is a severe impairment, based upon the requirements in the Regulations;

4.  This medically determinable impairment does not meet or medically equal one of the listed impairments in [the Listings of Impairments];

5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision; the undersigned has carefully considered all medical opinions of record regarding the severity of the claimant's symptoms;

6.  The claimant retains the residual functional capacity to perform a full range of light work; in an 8-hour workday, he could stand and/or walk for 6 hours and sit for 6 hours; he could lift and/or carry and push/pull 20 pounds occasionally and 10 pounds frequently;

---

[1]  In his motion for summary judgment, plaintiff lists hearing loss and depression. Neither of these problems, however, is mentioned in the record.

7. The claimant's past relevant work as a mechanic as he described this job in Exhibit 3E, page 5, did not require the performance of work-related activities precluded by his established residual functional capacity; alternatively, considering the claimant's vocational factors and residual functional capacity, a significant number of light and sedentary jobs exist in the national economy that he could perform;

8. The claimant is a younger individual between the ages of 18 and 44;

9. The claimant has a limited education;

10. The claimant has no transferable skills from skilled work previously performed as described in the body of this decision;

11. The claimant has the residual functional capacity to perform the full range of light work;

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, a finding of not disabled is directed . . .; and

13. The claimant was not under a disability as defined in the Social Security Act at any time through the date of the decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review on April 12, 2005, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the

3

Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff raised one issue. Specifically, plaintiff asserts that "[t]he ALJ erred in failing to evaluate whether plaintiff is entitled to a closed period of disability from the alleged onset date through a reasonable recovery period following surgery." Plaintiff's argument, in its entirety, is as follows:

> In his decision, the ALJ concluded that plaintiff remained capable of performing the full range of light work (TR 19, Findings 11). The ALJ arrived at this conclusion in part based upon the October 2003 consultative examination of Charles Miller, M.D., and the October 2004 consultative examination of Stephen McIntire, M.D.
>
> However, in the same month that Dr. Miller performed his evaluation, plaintiff underwent surgery for his back problem. A L5-S1 posterior spinal fusion and L5 decompression with instrumentation was performed on October 31, 2003 (TR 134). Clearly, with the necessity for surgery, the consultative examiner did not adequately evaluate the extent of plaintiff's back impairment. It is not unreasonable to conclude that plaintiff could not sustain substantial gainful activity prior thereto, and for a recovery period thereafter. In light of the need for surgery, the ALJ should reevaluate plaintiff's condition during this time period, and determined the date that he approved enough that he could return to work.[2]

---

[2] The court assumes this last sentence contains two errors. In particular, the last part of this sentence makes more sense as follows: ". . . and determine the date that he improved enough that he could return to work."

4

1   The ALJ discussed the October 31, 2003, surgery as follows:

> . . . The claimant was admitted to UCD Medical Center on October 31, 2003, for back surgery consisting of L5-S1 posterior spinal fusion, L5 decompression, left iliac crest bone graft, instrumentation L5 and S1, and L5 decompression with laminectomy and foraminotomy. Post-operative diagnosis was L5-S1 degeneration with spinal stenosis. On November 3rd, the claimant was noted to be mobilizing well. Standing films with brace in place demonstrated pedicle screws with posterolateral osseous fusion material bridging the L5-S1 interspace without evidence of instability. He was discharged the following day with a brace which he was to wear until follow-up in 3 weeks. On November 25, 2003, Dr. Gupta reported that current x-rays of the lumbar spine demonstrate allograft is well placed and there appears to be a fusion bone graft in the lateral gutters. The claimant's hardware was intact. Dr. Gupta noted the claimant was doing very well and should be walking at least 20 minutes every day.

While it is true that Dr. Miller evaluated plaintiff just before his surgery, Dr. McIntire evaluated plaintiff a year later in October 2004. As to Dr. McIntire's evaluation, the ALJ stated:

> In October 2004, the claimant reported to Steve McIntire, M.D., that he is single and has two daughters living with him. He does housework at home. Current medications included Ibuprofin and Hydrocodone. Examination revealed stable gait. There was slight flattening of the normal lumbar curvature and some loss of range of motion at the lumbar spine. There was no paraspinal muscle spasm or tenderness on palpation. Straight leg raise test, Lasegue, and Patrick's sign were negative bilaterally. Muscle bulk and tone were normal with motor strength at 5/5 throughout the upper and lower extremities. Sensation was intact in the upper and lower extremities and deep tendon reflexes were symmetric and within normal limits throughout. Dr. McIntire reported there were no findings of an ongoing lumbar radiculopathy or a myelopathy but the claimant walks with a somewhat stiff posture. Subjectively, he still has residual pain that occurs on and off but the pain is non-radicular in character. The doctor assessed that, in an 8-hour workday, the claimant could stand and/or walk for 6 hours and sit unrestricted. He could lift and/or carry 20 pounds occasionally and 10 pounds frequently. His ability to push and/or pull is not affected. The claimant could frequently climb, balance, kneel, crouch, and crawl but could bend or stoop on an occasional basis only. He has no manipulative, visual, or communicative limitations.

Therefore, in light of Dr. McIntire's opinion – which plaintiff does not challenge – the ALJ properly determined that plaintiff was not disabled.

/ / /

As to whether the ALJ should have considered a period of disability closing a reasonable time after surgery, the medical records show that plaintiff was doing well and was not having any problems as of February 2004 – just a few months after plaintiff's surgery. In particular, the ALJ noted:

> Follow-up x-rays of the lumbar spine at UCD Medical Center, obtained in January 2004 showed stable L5/S1 posterior fusion and L2/3 Grade I degenerative retrolisthesis. In February 2004, Dr. Gupta reported the claimant was doing well and was not currently having any active problems. He was given a prescription for physical therapy for leg strengthening and core strengthening exercises and was instructed to begin vocational rehab to explore other employment possibilities since he cannot go back to work as a mechanic. In May 2004, Dr. Gupta and Dr. Salamon examined the claimant and reported the claimant's back is improving. The claimant . . . had not participated in physical therapy to date. He was walking from 30 minutes to 2 hours daily. Physical examination showed 5/5 motor strength in the bilateral lower extremities. The claimant could heel and toe walk without difficulty and could squat to the floor and get up again. His incision was well-healed. X-rays showed the hardware to be in good position with evidence of moderate fusion masses bilaterally. . . . He was not scheduled to return before the one-year postop appointment.

Therefore, the record does not support a finding that plaintiff was disabled for a period after his surgery.

As to whether the ALJ should be required to reconsider plaintiff's pre-surgery abilities in light of the fact that he ultimately required surgery, the court finds that the ALJ's current assessment is supported by substantial evidence in the form of Dr. Miller's evaluation and findings. While there may appear to be a conflict between Dr. Miller's evaluation and the fact that plaintiff underwent surgery later the same month, as outlined above, the ALJ's resolution of the conflict must be given deference so long as it is based on substantial evidence. Here, the court finds that Dr. Miller's evaluation constitutes substantial evidence for the ALJ's conclusion that plaintiff was not disabled at any time prior to his surgery.

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: June 2, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE